for the Appellant, Mr. Craven, and for the Appellee, Ms. Martinkus. May it please the Court, Counsel, I'm Don Craven on behalf of the Appellant, Mr. Carter. I'd like the Court to keep in mind a few questions as we proceed today. Let's assume that we have a couple who are married at the age of 18. For purposes of the analogy, a husband becomes a firefighter at the age of 21, and the couple gets divorced at the age of 22. Two months after that divorce, the firefighter becomes disabled as a result of an injury in the line of duty disability, applies for and receives the line of duty disability at the age of 22. Is the ex-spouse, same language as in the divorce decree in my analogy as is in this case, at the age of 22, is the ex-wife entitled to a share of that disability? Same set of facts, but let's assume that they're now 35. They get divorced, he becomes disabled. He's not yet eligible for a retirement pension. Is the ex-wife entitled to a share of a duty disability? Let's move it up to age 41. At age 41, the firefighter now has 20 years of service on the fire department, and is eligible for a retirement pension. It would be deferred, payments would be deferred until he's age 50, but he's eligible to retire. He could elect to retire. Is the ex-wife then, but he instead takes a duty disability pension. Is the ex-wife then entitled to a share of that duty disability pension? And then let's assume the same set of facts, but he's now 50. Get divorced and then disabled shortly thereafter. Is she then entitled to a share of that duty disability pension? Why the questions? Schertz, the Schertz case and the Marshall case cited by the appellee in this case, both emphasize that this issue should be decided as a matter of the intention of the parties, set forth in any settlement agreement or set forth in the dissolution decree. If it's a matter of the intention of the parties, what difference does it make how old he is when he retires, or when he takes a duty disability, and what difference does it make if he's eligible to retire? The pension code makes no distinction, for purposes of a duty disability pension, between a firefighter who is 22 and a firefighter who is 52. But both Marshall and Schertz emphasize that at the time the firefighter took a duty disability pension, he was eligible to retire. If it's a matter of the intention of the parties, or if it's a matter of the construction of the pension code, that fact makes no difference. Both cases also use the phrase that the firefighter elected to take a duty disability pension. Firefighters don't elect to take a duty disability pension in the same vein that they elect to retire. Firefighters are awarded duty disability pensions when they are injured in the line of duty, when they file an application for a duty disability pension with the pension board in the community in which they reside. And if the pension board, examined by three doctors, and those three doctors and the pension board, as a result of those examinations, determines that that firefighter is disabled from any service with the fire department. It's not a voluntary election. It's not automatic. There's a burden of pleading and proving a disability from service. Disability benefits aren't accrued. Disability benefits aren't accumulated. Disability benefits have nothing to do, there's no term of service requirement. A firefighter is as eligible for a duty disability pension as a result of an injury in a line of duty on day one of service, as he or she would be on the last day of service. It's not a property interest that's accumulated or earned. Disability benefits differ from retirement benefits in that they are intended to replace an income stream, not provide a retirement benefit. Under the pension code, disability benefits are static. There is no automatic increase, there's no cost of living increase. The duty disability benefit that you are awarded at the time of your pension hearing remains static, so long as you maintain that duty disability pension. Duty disability pensions are free from income taxes, as opposed to retirement, federal anyway, as opposed to retirement benefits, which are taxable. Duty disability benefits under the code can last a lifetime. Duty disability benefits under the code can also be terminated when a firefighter recovers from the duty disability or has the option to convert that duty disability to a retirement pension. There is no mandatory retirement age in the pension code, and it's stipulated in this matter that there is no mandatory retirement age for Champaign firefighters. The pension code, if a firefighter has a duty disability pension, the pension code does not require that firefighter to convert to a retirement pension at any specific age. To the contrary, the pension code provides to that firefighter the option to convert from a disability to a retirement, but that's entirely at the discretion of the firefighter. It can't be forced. It can't be coerced. And as I mentioned, if the firefighter recovers from disability, you return to service. Disability pension over, and you're back in service, and once you meet the requirements of the pension code, you're then eligible to retire. A pension code, a disability pension, as I said, it's... Is your client in a position to take a retirement pension at this time? Yes. So it's discretionary on his part? Well, it's discretionary on his part only to the point that he can apply for a duty disability pension or he could apply for a retirement pension. It's not discretionary. He's absolutely entitled to a retirement pension. He's only entitled to a duty disability pension upon a finding of the Champaign Fire Pension Board that he's eligible for that. Right. I understand that. But he could, at his age, he could take a retirement pension, right? That's correct. All right. But again, let's assume that this happened when he was 22 instead of 52. He's not eligible to take a retirement pension at age 22. That doesn't impact the analysis of the pension code and how the pension code and the setup of duty disability pensions applies to the firefighter. There's no distinction in the pension code between a duty disability pension for a 22-year-old and for a 52-year-old. Counsel, would you discuss the language in the marital settlement agreement in this case and why you don't believe that it causes the appellee to be entitled to a portion of this? The language in the decree in this case talks about retirement pensions. There is one phrase where it makes no specific reference to duty disability pensions, but there is one phrase where there is a catch-all about any other benefits under the code. But it does not talk about duty disability pensions. And the code talks, the code, there's a structural difference in the pension code between a duty disability pension and a retirement pension. The General Assembly treated them very differently, and that difference in treatment is most clearly set forth in the Quildreau provisions in which the General Assembly excluded from any Quildreau application any benefits under a duty disability pension. Duty disability pension payments cannot be diverted to, under the language of the code, to an alternate payee. There's a clear distinction between retirement pensions and the way they're treated and duty disability pensions and the way they're treated in the pension code. I don't think one oblique reference to, and anything else that anybody's eligible for, qualifies for a clear division of duty disability pensions under the provisions of the code. There will no doubt be argument here, as there was below, as there was in Marshall and as there was in Schertz and as there was in Bell, that the result of which we maintain is required by the pension code is not fair, is not equitable. I could become, I could delve into firefighter language a little bit more. But because the firefighter has the option to take a duty disability pension than instead of taking a retirement pension, that the firefighter somehow has the option to remove the opportunity for an ex-spouse to get a share of the pension benefit. And I understand that argument. But it's the role of this court to interpret the pension code and to apply the pension code in this case. The pension code treats these two things very differently. Under the provisions of the pension code, assuming that we're in the position where one spouse has the opportunity to deprive unilaterally another spouse of, that's a problem in the pension code. The vagaries of life may deprive Mrs. Carter of her opportunity to have what she claims to be a share of Mrs. Carter's pension. If she predeceases him, if she had predeceased him, that's over. If he got married and died, spousal benefits would go to new wife. The vagaries of life and the vagaries of the pension code may act to deprive a spouse of a claimed share of a pension. The unfairness, if you will, of the position that we assert can be cured. But it should not be cured by this court stretching the terms, or the trial court, stretching the terms of the pension code to reach that fair or equitable result. It's the role of this court and the role of the trial court to interpret and apply the terms of the pension code as now constructed. And the terms of the pension code clearly distinguish between retirement pensions and disability pensions. Disability pensions are not subject to division by this court order or according to the structure of the pension code. There is a remedy. And as a member of this court once demonstrated to me in an oral argument in another case, that remedy is directly across the street behind me. Change the pension code. If there is an unfair result, an inequitable result, an arcane result in the proper construction of the pension code, or to quote a recent decision, recent dissent from this case, perhaps a Kafkaesque result from the construction of legislative language, the remedy is not for this court to read into the code something that is there. The remedy is for the appropriate parties to go across the street and change the law. The pension code creates a clear division between the two forms of retirement. We think that both the pension code and the language of this order clearly distinguish between retirement and disability. We would ask that the decision of the circuit court be reversed. Thank you. If there are no questions, I'll retire. Good morning. Ann Martinez on behalf of the appellee. May it please the court and counsel. I want to discuss some of the issues that were raised by the appellant. First of all, in the Marshall case, which came out of this district, and in the Schultz case, both of those parties were eligible to receive retirement benefits. And I think it's important to focus on that, because that was something that the court in this court, in Marshall, and then the court in Schultz, did focus on. And basically, the issue was, was that person receiving the pension eligible to receive disability? Both, in that case, the court basically focused on whether it was income replacement or retirement placement. And the Belk court also focused on that. In Belk, however, the retiree or the person receiving temporary disability was 41 years of age and was not entitled to receive retirement, whereas in both the Marshall court and the Schultz court, the retired person was allowed to receive both disability pension and a, or a retirement pension. And that's identical to this case. Mr. Carter is eligible to receive both a disability pension and a retirement pension. And if the court looked at, the court looked at the facts that were stipulated to, the amount of that pension is identical to what he would have received had he elected to take a retirement pension versus a disability pension. And I also wanted to focus on the language of both the Schultz case and the Marshall case, which was decided by this court. Neither of those talked about pension funds or retirement pension versus a disability pension in the actual language. But what the court did in both cases, they looked at, like I said, whether or not the party was eligible for retirement or eligible to receive disability pensions. So in our case, I think both of those cases support our case, and focusing on that issue, whether or not the person is entitled to receive the pension or retirement benefit or disability benefit is really income replacement. Because if he had elected to receive the disability or the retirement pension, then in effect what would happen is that my client would get nothing. And so basically what he elected to do is to choose disability versus retirement to basically forego any amount of money, which approximately would be around $1,000 a month she would receive. The other thing is, I think the trial court correctly pointed out, that the language in the Merrill-Solomon agreement or in the court's order in the Carter case was more broad, even from Marshall and from Belt. Basically, she was entitled to any pension benefit under the code. Because it basically stated that the Merrill interest in any pension benefits generated under said Champaign Fireman's pension fund, and any pension fund actually received by the respondent upon retirement, under the terms and conditions of this plan. Therefore, we have the retirement pension and we have the disability pension. Both are pensions, and as a result, the broad language of the agreement or the order that was entered in our case, basically she's entitled to either of those benefits under the Merrill-Solomon agreement. So number one, Mr. Carter's disability pension is not an income replacement, which the court focused on in Marshall and in Schultz. In our case, he is in retirement status. I think I outlined in my brief some of the factors that you would consider to determine whether or not he was in retirement status or allowable for retirement. And so number one, I think the court could find, as it did in the prior two cases, that it clearly is not an income replacement. Basically, it's a retirement placement. If the court does not find that and allow my client to receive her portion of the disability pension, I think the court can then rely upon the language set forth in the Merrill-Solomon agreement or the court's order with basically this broad umbrella under which she would be entitled to receive any benefit under the plan. I think those are the two issues that are present. And basically, I think both the court in Marshall, Schultz, and in the trial court here, basically would not or thought that my client was entitled to a disability pension, that the result would be devastating in the fact that she would receive nothing. And what motivation does Mr. Carter have in returning? If he returns to work and elects to retire thereafter, my client gets her portion of that, whereas now he receives a disability and my client gets nothing. And I think the reasoning by this court in Marshall, and we have the Schultz case in our cases, that should be prevented. It's not a technicality and my position is the language, even if the court were not to find it was retirement versus income replacement, the language is broad enough to encompass both the disability pension and the retirement pension. And as a result, my client should receive her portion of that based on the formula set forth in the court's order. Any questions? I don't think so. Thank you, judges. Thank you, counsel. Nowhere in the pension code does it say if you are of an age eligible to retire, are you denied the opportunity or the right to a duty disability pension, if you meet the requirements for a duty disability pension. Age is not a factor. And if age and eligibility to retire is a factor, let's go back to my example of the 41-year-old, who now has 20 years on the fire department and is disabled. He, under the pension code, under the arguments presented by the appellee, is eligible to retire. So let's make him retire. So nobody gets paid from age 41 to age 50. Because he's not eligible to receive a pension payment until he turns 50. He's eligible to retire. I close with the same argument I closed with earlier. If there's an unfairness here, if there's a perceived unfairness or a perceived inequity, if there's a gap in the statute that needs to be filled, it is not for the court to fill it by stretching the statute to fix the problem. It gets fixed over there. And I would urge the court, again, to reverse the trial court. And if it's necessary to send a letter across the street, we send a letter across the street. But it's not a problem to be solved here. The application of the pension code distinguishes between disability pensions and retirement pensions. And I thank you for your time. Thank you, counsel. We'll stand and recess until readiness for the next case.